IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANDREW PERRONG, individually and on behalf of a class of all persons and entities similarly situated**, <br><br> *Plaintiff*, <br><br> v. <br><br> **SOUTH BAY ENERGY CORP.**, <br><br> *Defendant*. | **Case No. 2:20-cv-05781-JDW** |

## <u>MEMORANDUM</u>

Andrew Perrong is a frequent filer of Telephone Consumer Protection Act lawsuits. As such, he sometimes pursues novel legal theories as part of his business model. However, Mr. Perrong's latest theory has no legs, and he lacks standing to bring the additional claim set forth in his proposed amended complaint. Because the claim would be futile based on the facts of this case, the Court will deny Mr. Perrong's Motion to Amend his Complaint to pursue it.

## I.    BACKGROUND

South Bay Energy Corp. is an electric generation supplier that sells residential electric services to customers. It utilizes telemarketing to make sales, and it hired Webman's World, LLC to make telemarketing calls on its behalf. Adam Webman owns and operates Webman's World. On November 11 and 12, 2020, Webman's World made telemarketing calls on behalf of South Bay to Mr. Perrong's residential telephone number. At the time that Webman's World made those calls, Mr. Perrong's phone number was listed on the national Do-Not-Call Registry (the "DNC List"). In addition, South Bay, Webman's World, and Mr. Webman (collectively "Defendants") did not have a written do-not-call policy in place when Webman's made those calls to Mr. Perrong.

Mr. Perrong does not allege that he ever requested not to receive telemarketing calls made on behalf of South Bay.

On November 18, 2020, Mr. Perrong filed a putative class action complaint against South Bay for violating the TCPA by calling him even though his phone number is listed on the national DNC List.  The Court entered a Scheduling Order in this case and ordered that any motions to amend the Complaint were due by March 31, 2021.  On March 18, 2021, after receiving some discovery, Mr. Perrong moved to amend his Complaint in order to include the allegations set forth above, add Webman's World and Mr. Webman as defendants in this matter, and assert an additional claim against Defendants, in Count II, for violation of the TCPA, specifically 47 C.F.R. § 64.1200(d)(1).  South Bay opposes the motion to amend with respect to the addition of Count II only.  The motion is ripe for disposition.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 15 conditions amendment of a pleading on the Court's leave or the opposing party's written consent. The rule instructs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This liberal amendment regime helps effectuate the "general policy embodied in the Federal Rules favoring resolution of cases on their merits." *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017). The factors set out in the Supreme Court's decision in *Foman v. Davis*, 371 U.S. 178 (1962), guide a court's decision about whether to permit an amendment. A court may deny leave to amend based on undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, prejudice to the opposing party, and futility. *Id.* The *Foman* factors are not exhaustive, allowing a court to ground its decision, within reason, on consideration of other

equitable factors, such as judicial economy/burden on the court and the prejudice denying leave to amend would cause. *See USX Corp. v. Barnhart*, 395 F.3d 161, 167-68 (3d Cir. 2004).

"'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 243 (3d Cir. 2010) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). In determining whether a claim would be futile, "the district court applies the same standard of legal sufficiency as applies under [Federal] Rule [of Civil Procedure] 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016).

## III.   DISCUSSION

As the party invoking the Court's jurisdiction, Mr. Perrong must allege facts that demonstrate his standing to bring suit. *See LaSpina v. SEIU Pennsylvania State Council*, 985 F.3d 278, 284 (3d Cir. 2021) (quotation omitted). To do so, he "must show injury in fact, causation, and redressability." *Id.* (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). Count II of Mr. Perrong's proposed amended complaint implicates the causation element, *i.e.* whether his injury "is fairly traceable to the challenged conduct" of Defendants. *Id.* (quotation omitted). "[T]he traceability element is 'akin to 'but for' causation in tort.'" *Id.* (same). "In assessing whether the defendant's particular conduct caused the plaintiff's injury, the variable to isolate and change is the conduct of the defendant the plaintiff challenges." *Id.* at 286. Thus, employing this framework, the Court must ask: Had Defendants' conduct that Mr. Perrong challenges not occurred, would he have suffered an injury? If he would have, then the challenged conduct did not actually cause Mr. Perrong's injury; if not, then it did. *See id.* at 285. In Count II of the

3

proposed amended complaint, the challenged conduct is Defendants' alleged failure to have a written policy for maintaining a do-not-call list, as required by 47 C.F.R. § 64.1200(d)(1).

Mr. Perrong's injury does not come from Defendants' alleged violation of Section 64.1200(d)(1). That provision requires a company to maintain an internal list of subscribers who requested that the company not call them:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls **made by or on behalf of that person or entity**.

47 C.F.R. § 64.1200(d) (emphasis added). That provision applies only to individuals who have directed a company not to call them. Mr. Perrong never directed South Bay, Webman's World, or Mr. Webman not to call him.  That is because Mr. Perrong did not satisfy the "regulatory prerequisite" before he could bring a claim under Section 64.1200(d)(1).  *Drake v. FirstKey Homes, LLC*, 439 F. Supp. 3d 1313, 1325 (N.D. Ga. 2020).  Even if one or more Defendants had maintained an internal do-not-call list, that compliance would not have prevented them from calling Mr. Perrong.

Mr. Perrong tries to avoid this conclusion by suggesting that Section 64.1200(d)(1) requires companies to maintain an internal policy to avoid calling anyone on the national DNC List, but the regulatory language does not support his interpretation. No party has directed the Court to any official FCC interpretation of Section 64.1200. The Court therefore turns to traditional canons of statutory interpretation. *See Green v. Brennan*, 136 S. Ct. 1769, 1776 (2016); *McCann v. Unum Provident*, 907 F.3d 130, 144 (3d Cir. 2018) ("[T]he basic tenets of statutory construction hold true for the interpretation of a regulation.") (quotation omitted).

"It is the cardinal canon of statutory interpretation that a court must begin with the statutory language." *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010), *as amended*

(May 7, 2010). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Id.* (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992)); *see also Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3d Cir. 1998) ("Where the statutory language is plain an unambiguous, further inquiry is not required . . .."). To determine whether statutory language is ambiguous, the Court must "read the statute in its ordinary and natural sense." *Id.* (quotation omitted).

Section 64.1200 is not ambiguous. The language "not to receive telemarking calls made by or on behalf of that person or entity" refers back to the "person or entity" that "initiate[s]" a call. Thus, the provision applies to calls that a company might make to a list of people that have directed the company not to call them. The regulation contemplates a specific list, which is different from (but might overlap with) the national DNC List.

The regulation's structure confirms this interpretation. Section 64.1200(d) prohibits a company from calling individuals who have directed the company not to call them. Section 64.1200(c)(2) prohibits calls to individuals on the national DNC List, with certain limited exceptions. If Section 64.1200(d) applied to every individual on the national DNC List, it would render Section 64.1200(c)(2) superfluous, or at least "insignificant." *United States v. Cooper*, 396 F.3d 308, 312 (3d Cir. 2005).

Mr. Perrong might be right that Defendants violated the TCPA if they failed to maintain a list of individuals who directed South Bay not to call them. But Mr. Perrong never asked to be on such a list, so its non-existence did not cause his injury. "In other words, a caller could only violate the regulation if it called someone who had asked to be put on the list." *Drake*, 439 F. Supp. 3d at 1324. Put another way, even if Defendants had complied with the TCPA and maintained an internal do-not-call list, their compliance would not have prevented a call to Mr. Perrong because

he would not have been on that list.  Instead, Mr. Perrong's injury traces to the violation of a different provision, Section 64.1200(c)(2).

## IV.    CONCLUSION

The TCPA regulation on which Mr. Perrong relies does not require a company to maintain a written policy concerning calls to people on the national DNC List.  But that's the only list on which Mr. Perrong was listed.  Because Defendants' compliance with Section 64.1200(d)(1) would not have avoided Mr. Perrong's injury, he does not have standing to sue for a violation of that provision. The Court will therefore deny his Motion to Amend his Complaint to the extent it seeks to add Count II.  An appropriate Order follows.

BY THE COURT:


/s/ Joshua D. Wolson
JOSHUA D. WOLSON, J.


Dated:  April 13, 2021